UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BENJAMIN NADER, a minor child, by and with his parents, ET AL. | CIVIL ACTION |
| VERSUS | NO. 18-3861 |
| ST. TAMMANY PARISH SCHOOL BOARD | SECTION "R" (3) |

## ORDER AND REASONS

Before the Court are the parties' dueling motions for summary judgment on plaintiffs' claim for attorneys' fees under the Individuals with Disabilities Education Act (IDEA). The Court finds that plaintiffs are not entitled to attorneys' fees under the IDEA. It therefore grants defendant's motion for summary judgment and denies plaintiffs' motion.

## I. BACKGROUND

### A. The IDEA

This case arises out of an IDEA complaint and due process hearing against defendant St. Tammany Parish School Board.[1] The IDEA "is a Spending Clause statute that seeks to ensure that 'all children with

---

[1] R. Doc. 19-2 at 2 ¶ 5; R. Doc. 21-1 at 1 ¶ 5.

disabilities have available to them a free appropriate public education.'" *Schaffer v. Weast*, 546 U.S. 49, 51 (2005) (quoting 20 U.S.C. § 1400(d)(1)(A)). To receive federal funding under the Act, each state must comply with certain conditions, including procedural safeguards set forth in § 1415. *See* 20 U.S.C. § 1412(a), (a)(6)(A). One of these conditions is that each state must allow "any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child." *Id.* § 1415(b)(6)(A). If the matter cannot be resolved through an informal meeting, complaining parents have a right to an "impartial due process hearing" conducted by a state or local educational agency, as provided by state law. *Id.* § 1415(f)(1)(A), (f)(B)(ii). The IDEA also permits a prevailing party in that due process hearing to recover its attorneys' fees by bringing a subsequent action in federal court. *See id.* § 1415(i)(3).

B. **Factual Background**

Plaintiff Benjamin Nader is a student with disabilities in the St. Tammany Public School System, and the son of plaintiffs James and Michelle Nader.[2] On October 20, 2017, James and Michelle Nader filed a special education due process request, pursuant to the IDEA and Louisiana's

---

[2] R. Doc. 19-2 at 1 ¶¶ 1-2; R. Doc. 21-1 at 1 ¶¶ 1-2.

implementing regulations, to determine whether defendant's actions or inactions violated Benjamin's rights to a free appropriate public education.[3] A hearing on this request was conducted from February 19 to 22, 2018, before Administrative Law Judge William H. Cooper, III.[4]

James Nader served as lead counsel during these administrative proceedings.[5] James Nader is a practicing attorney, licensed in Louisiana, Texas, and Oklahoma, and is a shareholder and director at the law firm of Lobman, Carnahan, Batt, Angelle & Nader in New Orleans.[6] Sarah Didlake, an associate attorney at Lobman, Carnahan, Batt, Angelle & Nader, also provided legal services in connection with Benjamin's administrative proceeding.[7]

On March 12, 2018, Judge Cooper issued a written Decision and Order on the due process request.[8] He held that defendant had denied Benjamin "a free and appropriate public education by segregating him and not accommodating or modifying his school work or study guides in a manner

---

[3] R. Doc. 19-2 at 2 ¶ 5; R. Doc. 21-1 at 1 ¶ 5; R. Doc. 19-13.
[4] R. Doc. 19-5 at 1.
[5] R. Doc. 28-1 at 2 ¶ 5; R. Doc. 19-7 at 2 (affidavit of James Nader).
[6] R. Doc. 19-7 at 1.
[7] *See* R. Doc. 19-8 at 1 (affidavit of Sarah Didlake); R. Doc. 19-10 (billing records from Lobman, Carnahan, Batt, Angelle & Nader, indicating that Didlake billed time for services provided in connection with the administrative proceedings).
[8] *See* R. Doc. 19-5.

reasonably calculated to enable him to receive educational benefits."[9] Judge Cooper ordered defendant to provide Benjamin with curriculum specialists in social studies and science who would, in a timely manner, "accommodate and modify each week's school work and study guides."[10]

On April 11, 2018, plaintiffs filed this complaint, stating that as the prevailing parties in the administrative proceedings, they are entitled to attorneys' fees under the IDEA.[11] Plaintiffs and defendants now both move for summary judgment on plaintiffs' claim.[12]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta &*

---

[9] *Id.* at 3.
[10] *Id.* at 19.
[11] R. Doc. 1.
[12] R. Doc. 19; R. Doc. 27.

*Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

### III. DISCUSSION

The IDEA states that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Defendant does not contest that the Naders were the "prevailing party" in the administrative proceeding. The

parties instead dispute whether "a prevailing party who is [a] parent" may be awarded attorneys' fees when that parent served as his child's lead counsel. The parties further dispute whether plaintiffs can recover attorneys' fees in connection with Didlake's legal services.

### A. James Nader

The Second, Third, Fourth, and Ninth Circuits are the only circuits that have addressed whether an attorney-parent who appeared on his child's behalf in an IDEA proceeding can recover attorneys' fees as a prevailing party. *See Ford v. Long Beach Unified Sch. Dist.*, 461 F.3d 1087 (9th Cir. 2006); *S.N. ex rel. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601 (2d Cir. 2006); *Woodside v. Sch. Dist. Of Phila. Bd. of Educ.*, 248 F.3d 129 (3d Cir. 2001); *Doe v. Bd. of Educ. of Balt. Cty.*, 165 F.3d 260 (4th Cir. 1998). Each held that the attorney-parent could not recover attorneys' fees. *Id.* No court in this district has addressed this question.

In *Doe*, the Fourth Circuit grounded its decision in an application of *Kay v. Ehrler*, 499 U.S. 432 (1991). In *Kay*, the Supreme Court held that a *pro se* plaintiff who is an attorney cannot be awarded attorney's fees under the fee-shifting provision of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988(b). *See* 499 U.S. at 437. The Supreme Court reasoned that the "overriding statutory concern" in the fee-shifting provision was to "obtain[]

independent counsel for victims of civil rights violations." *Id.* According to the court:

> A rule that authorizes awards of counsel fees to *pro se* litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case.

*Id.* at 438.

The *Doe* court began by noting that the fee shifting statute at-issue in *Kay* was worded similarly to the attorneys' fees provision in the IDEA at the time *Doe* was decided.[13] *Doe*, 165 F.3d at 262; *compare* 42 U.S.C. § 1988(b) ("the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs"), *with* 20 U.S.C. § 1415(e)(4)(B) (2004) ("the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party"). The court then acknowledged that *Kay*'s holding was not directly applicable to the IDEA's attorneys' fees provision, because attorney-parents in IDEA administrative proceedings were not litigating *pro*

---

[13] The IDEA attorneys' fees provision was amended in 2004 to the current text, which controls this action. *See* Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108–446, 118 Stat. 2647. That amendment became effective on July 1, 2005. *See id.*

*se*. *See Doe*, 165 F.3d at 263 ("Though parents have some rights under the IDEA, the child, not the parents, is the real party in interest in any IDEA proceeding."). But the court nonetheless reasoned that *Kay* "ha[d] relevance," because "[l]ike attorneys appearing *pro se*, attorney-parents are generally incapable of exercising sufficient independent judgment on behalf of their children to ensure that 'reason, rather than emotion[,]' will dictate the conduct of the litigation." *Id.* (quoting *Kay*, 499 U.S. at 437). The Fourth Circuit thus concluded that the reasoning in *Kay* applied to the IDEA attorneys' fees provision and that attorney-parents were barred from recovering attorneys' fees under the statute. *Id.*

The Second, Third, and Ninth Circuits similarly found that although attorney-parents in IDEA proceedings were not litigating *pro se*, the reasoning in *Kay* was still applicable. They held that attorney-parents were therefore categorically barred from recovering attorneys' fees. *See Ford*, 461 F.3d at 1091 ("Like an attorney appearing *pro se*, a disabled child represented by his or her parent does not benefit from the judgment of an independent third party."); *S.N.*, 448 F.3d at 603 ("A rule that allows parent-attorneys to receive attorneys' fees would discourage the employment of independent counsel."); *Woodside*, 248 F.3d at 131 (agreeing with *Doe*'s reasoning that "the danger of inadequate representation is as great when an emotionally

9

charged parent represents his minor child as when the parent represents himself").

The Court finds the reasoning in these other circuit decisions persuasive. The decisions rest on the premise that the Supreme Court's analysis in *Kay* guides the interpretation of the IDEA. Indeed, the Fifth Circuit recently recognized the primacy of *Kay* in interpreting federal statutes with attorneys' fees provisions. *See Gahagan v. U.S. Citizenship & Immigration Servs.*, 911 F.3d 298 (5th Cir. 2018). In *Gahagan*, the Fifth Circuit addressed whether an attorney appearing *pro se* could recover his attorneys' fees under the Freedom of Information Act (FOIA). 911 F.3d at 300. The panel ruled that *Kay* should be read as overruling a 1983 Fifth Circuit decision holding that attorneys appearing *pro se* could in fact recover attorneys' fees under FOIA. *See Gahagan*, 911 F.3d at 302-03; *Cazalas v. DOJ*, 709 F.2d 1051 (5th Cir. 1983). The *Gahagan* court reasoned that FOIA's attorneys' fees provision and the provision in § 1988(b)—which was the subject of *Kay*—were substantially similar in wording, and that the Supreme Court has repeatedly instructed the lower courts "to apply consistent interpretations to federal fee-shifting statutes." *Gahagan*, 911 F.3d at 303-04.

Thus, the Fifth Circuit has instructed the lower courts to apply the Supreme Court's interpretation in *Kay* to fee-shifting statutes that are similar to § 1988(b). The current attorneys' fee provision in the IDEA is indeed worded similarly to § 1988(b). *See* 20 § 1415(i)(3)(B)(i)(I) (2005) ("the court . . . may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability"); 42 U.S.C. § 1988(b) ("the court . . . may allow the prevailing party . . . a reasonable attorney's fee as part of the costs"). The provision in the IDEA should therefore be viewed as an attempt by Congress to incentivize parties to retain independent, third-party counsel for due process hearings. *Kay*, 499 U.S. at 438; *Gahagan*, 911 F.3d at 303-04. The Court agrees with the Second, Third, Fourth, and Ninth Circuits that to best actuate this congressional intent, the IDEA should be interpreted as barring attorney-parents from recovering attorneys' fees. *See Ford*, 461 F.3d 1087; *S.N. ex rel.*, 448 F.3d 601; *Woodside*, 248 F.3d 129; *Doe*, 165 F.3d 260. The Supreme Court has stated that "[w]ithout question a parent of a child with a disability has *a particular and personal interest* in fulfilling 'our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities.'" *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 529 (2007) (quoting 20 U.S.C. § 1400(c)(1)) (emphasis

added). That obvious personal interest prevents an attorney-parent from having the "emotional detachment" necessary to provide his child with effective representation. *S.N.*, 448 F.3d at 603. An interpretation that bars attorney-parents from recovering attorneys' fees therefore bolsters the statutory policy behind the IDEA's fee-shifting provision.[14]

The basis for concluding that the IDEA does not permit this recovery has only become stronger since *Doe*, *Woodside*, *S.N.*, and *Ford* were decided. There have been two notable developments in the IDEA since then. First, in *Winkelman*—which was decided one year after the most recent of these decisions—the Supreme Court ruled that the IDEA grants parents "independent, enforceable rights" that "encompass the entitlement to a free appropriate public education for the parents' child." *Winkelman*, 550 U.S. at 533. This decision allows non-attorney parents to appear in IDEA proceedings *pro se* to prosecute IDEA claims on their own behalf. *See id.* at 535. By holding that parents have enforceable rights under the IDEA, the Supreme Court blurred the line between whether an attorney-parent is truly

---

[14] Because the Court's holding is based upon an interpretation of the IDEA, this blanket bar on attorney-parents recovering attorneys' fees must apply even in instances—as is the case here—where the child was adequately represented by his attorney-parent. *See Ford*, 461 F.3d at 1091 (noting that "on some occasions, attorney-parents will provide independent, reasoned representation to their children," but nonetheless holding that its interpretation of the statute "will better serve Congress' intentions").

representing only his child's interests when appearing in IDEA proceedings, or if he is also representing his own.[15] The opinion suggests that those rights are necessarily intertwined. If the attorney-parent is necessarily vindicating his own interests when appearing in his child's IDEA proceeding, then the reasoning in *Kay* is directly applicable to the IDEA.

Second, each of *Doe*, *Woodside*, *S.N.*, and *Ford* applied the previous version of the IDEA attorneys' fees provision.[16] The earlier version provided that the court had the discretion to "award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B) (2004). The Fourth Circuit in *Doe* noted that the wording of this provision supported a reading that an attorney-parent does not represent himself when he pursues IDEA services in a due process hearing. *Doe*, 165 F.3d at 262-63. The court

---

[15] This line is particularly blurry in this case. The record here is ambiguous as to whether James Nader was himself a party in the due process hearing. The formal request for a due process hearing that the Naders filed does not clearly state whether they themselves were parties. *See* R. Doc. 19-13. The appearances page in the transcript for the first day of hearings states that James Nader was appearing "for the minor child *and parents*." R. Doc. 26-4 at 3 (emphasis added). But in his Decision and Order, Judge Cooper stated that James and Michelle Nader "requested a hearing on behalf of [their] minor child." R. Doc. 19-5 at 2.

[16] *S.N.* and *Ford* were both decided after the IDEA was amended in 2004, but each still applied the prior version of the provision, which was in effect when the district courts rendered their decisions. *See S.N.*, 448 F.3d at 602 & n.2; *Ford*, 461 F.3d at 1090.

13

emphasized that "by providing fees 'to the parents of a *child or youth with a disability who is the prevailing party*,'" the provision makes clear that the "party" who is the focus of the provision is the child, not the parent. *Id.* at 263 (quoting 20 U.S.C. § 1415(e)(4)(B) (2004)) (emphasis in original). But the current IDEA provides that a court "may award reasonable attorneys' fees . . . *to a prevailing party who is the parent* of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I) (2005) (emphasis added). This reformulation indicates that the "party" who is entitled to an award of attorneys' fees is the *parent*, not the child. Thus, the provision contemplates that an attorney-parent is a party to the IDEA proceedings. If that is the case, then *Kay*'s holding would bear directly on the Court's interpretation of the IDEA, as *Gahagan* instructs it should.

Finally, plaintiffs' argument that regulatory guidance from the U.S. Department of Education (DOE) requires a different outcome is unavailing. Plaintiffs point out that when the DOE promulgated its rules to implement the 2004 amendments of the IDEA, it noted that "[o]ne commenter recommended that § 300.517(a)(1)(ii) and (iii) be revised to refer to an attorney of a parent or a parent because there are many parents who are attorneys representing their children in due process hearings." Assistance to States for the Education of Children With Disabilities and Preschool Grants

for Children With Disabilities, 71 Fed. Reg. 46540, 46708 (Aug. 14, 2006) (codified at 34 C.F.R. § 300.517). In response to this comment, the DOE stated that it "decline[d] to add language to § 300.517(a)(1)(ii) to refer to a parent who is an attorney, because the reference to '*an attorney of a parent*' would include anyone serving as an attorney." *Id.* (emphasis added). But Section 300.517(a)(1)(ii)—the focus of this passage—corresponds to 20 U.S.C. § 1415(i)(3)(B)(i)(II), which is a different provision from the one that permits a prevailing party parent to recover attorneys' fees. It instead provides that the court may award attorneys' fees "to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation. . . ." 20 U.S.C. § 1415(i)(3)(B)(i)(II). The phrase "an attorney of a parent"—which the DOE interpreted in this guidance—does not appear in the provision allowing prevailing party parents to recover attorneys' fees. *See id.* § 1415(i)(3)(B)(i)(I).

Plaintiffs do not cite any case where a federal district or appellate court addressed whether this interpretation of § 1415(i)(3)(B)(i)(II) overruled previous decisions that attorney-parents could not recover attorneys' fees. In fact, circuit court decisions issued after August 14, 2006—the date of the

DOE's guidance—have continued to reinforce the rule that attorney-parents cannot recover these fees. *See, e.g., Weissburg v. Lancaster Sch. Dist.*, 591 F.3d 1255, 1260-61 (9th Cir. 2010) (holding that attorney-grandparents who represent their grandchildren in IDEA proceedings may recover attorneys' fees, but citing *Ford, S.N., Woodside*, and *Doe* in reaffirming that attorney-parents may not recover); *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 423-25 (3d Cir. 2008) (reaffirming that *Woodside* precluded attorney-parents from recovering attorneys' fees); *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 826 (9th Cir. 2007) ("The District correctly argues, however, that attorney's fees should not be granted to *parent* attorneys who represent their children in IDEA proceedings." (citing *Ford*, 461 F.3d at 1090) (emphasis in original)). Plaintiffs suggest that these post-August 2006 decisions do not bear on whether the DOE's interpretation upended *Doe, Woodside, S.N.,* and *Ford*, because the guidance "has simply not been presented to or considered by the federal courts."[17] But plaintiffs discount the possibility that the DOE's guidance has not come up in this context because in that guidance the DOE was not actually interpreting the provision allowing prevailing party parents to recover their attorneys' fees.

---

17    R. Doc. 26 at 4.

In all, the Court finds that James Nader is not entitled to recover his attorneys' fees under the IDEA.

## B. Sarah Didlake

The parties also dispute whether plaintiffs can recover attorneys' fees for legal services provided by Sarah Didlake. The Court finds that plaintiffs may not recover attorneys' fees in connection with Didlake's legal services, because there is no genuine dispute that James Nader directed Didlake's work throughout the IDEA proceedings. James Nader states that he has been practicing law for over 35 years and is a Shareholder and Director at Lobman, Carnahan, Batt, Angelle & Nader.[18] He has also been an adjunct professor of law at Tulane University for over fifteen years.[19] Didlake is a recent law school graduate who has been practicing law as an associate attorney with Lobman, Carnahan, Batt, Angelle & Nader for approximately two years.[20]

Allowing plaintiffs to recover attorneys' fees for Didlake's legal services would undermine the purpose behind barring attorney-parents from recovering attorneys' fees. Parents like James Nader, who have the resources of a law firm at their disposal, would be able to direct the work of junior

---

[18]  R. Doc. 19-7 at 1.
[19]  *Id.* at 2.
[20]  R. Doc. 19-8 at 1-2.

attorneys but still recover fees for those attorneys' services. They would thus not be incentivized to obtain an independent third-party counsel to handle their children's hearings. A district court in the Southern District of New York was faced with a similar attempt by a corporate attorney to recover attorneys' fees under the Fair Credit Reporting Act for services provided by associates whose work he controlled and directed. *See Menton v. Experian Corp.*, No. 02-4687, 2003 WL 21692820, at *3 (S.D.N.Y. July 21, 2003). That court held:

> Allowing [the plaintiff] to recover attorney's fees simply because he utilized the assistance of two associates in the course of litigating this matter would undermine the general rule prohibiting attorneys' fees for *pro se* litigants who are attorneys. Here, [the plaintiff] is in control of this litigation, has appeared at every hearing, and has signed every pleading. Simply because he is fortunate enough have the resources of a large law firm, including associate assistance, we will not allow him to circumvent the rationale underlying the rule prohibiting a *pro se* attorney from recovering his own fees.

*Id.* (internal citation omitted). As already addressed, the rationale for why *pro se* litigants who are attorneys cannot recover attorneys' fees is equally applicable to attorney-parents in the context of the IDEA.

Like the attorney in *Menton*, here there is no material dispute that James Nader controlled the litigation during the IDEA proceedings and directed Didlake's actions. *See Baton Rouge Oil Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 376 (5th Cir. 2002) ("In a bench trial, the

court has somewhat greater discretion to consider what weight it will afford the evidence than it would in a jury trial" (internal quotation marks omitted)).[21] James Nader is a Shareholder and Director at Lobman, Carnahan, Batt, Angelle & Nader, while Didlake is a junior associate.[22] Plaintiffs state in their statement of facts that James Nader "served as lead counsel" in the IDEA proceedings.[23] Indeed, James Nader states in an affidavit that he "supervised" Didlake.[24] Two reports from a November 20, 2017 telephone status conference in the IDEA proceedings indicate that only the Naders, and not Didlake, participated on behalf of Benjamin Nader.[25] Finally, Didlake's subsidiary role in the proceedings is further shown by the fact that only James Nader appeared as counsel on each day of the hearings.[26]

---

[21] R. Doc. 1 (no jury demand in plaintiffs' complaint); R. Doc. 7 (no jury demand in defendant's answer); R. Doc. 17 (no jury demand in defendant's amended answer); R. Doc. 37 at 13 (parties stating in their joint pretrial order that this is a non-jury case).
[22] R. Doc. 19-7 at 1; R. Doc. 19-8 at 1-2.
[23] R. Doc. 28-1 at 2 ¶ 5.
[24] R. Doc. 19-7 at 3.
[25] *See* R. Doc. 21-2 at 1; R. Doc. 21-3 at 1.
[26] *See* R. Doc. 21-4 (excerpted records from each day of the due process hearings); R. Doc. 26-4 at 3 (appearances page for the due process hearings, indicating that "Lobman, Carnahan, Batt, Angelle" appeared "for the minor child and parents," and naming only James Nader as the individual attorney).

In all, plaintiffs are effectively attempting to recover attorneys' fees for any work performed by attorneys at Lobman, Carnahan, Batt, Angelle & Nader in connection with these IDEA proceedings. But because there is no genuine dispute that James Nader controlled that work, and because James Nader is the parent of Benjamin Nader, plaintiffs are not entitled to recover Didlake's attorneys' fees under the IDEA.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED and plaintiffs' motion for summary judgment is DENIED. Plaintiffs' complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this ___29th___ day of May, 2019.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE